1 Humberto M. Guizar (SBN 125769)
Kent M. Henderson (SBN 139530)
2 Angel Carrazco, Jr. (SBN 230845)
GUIZAR, HENDERSON & CARRAZCO, L.L.P.
3 18301 Irvine Boulevard
Tustin, CA 92780
4 Telephone: (714) 541-8600
Facsimile: (714) 541-8601
5
*Attorneys for Plaintiffs*
6

7                  **UNITED STATES DISTRICT COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9  N.L.A., a minor by and through her        Case No.
   guardian, MARICRUZ HERRERA,
10 individually and as heir at law and
   successor in interest to NOEL            **COMPLAINT FOR DAMAGES**
11 AGUILAR, deceased; and ELVIA
   AGUILAR, individually,                     1. Unreasonable Search and Seizure—
12                                               Detention and Arrest (42 U.S.C. §
                                                 1983)
13                          Plaintiffs,        2. Unreasonable Search and Seizure—
                                                 Excessive Force (42 U.S.C. § 1983)
14          vs.                                3. Unreasonable Search and Seizure—
   COUNTY OF LOS ANGELES;                        Denial of Medical Care (42 U.S.C.
15 ALBERT MURAD, an individual; JOSE            § 1983)
   RUIZ, an individual, and DOES 3-10,        4. Substantive Due Process—(42
16 inclusive,                                    U.S.C. § 1983)
                                               5. Municipal Liability for
17                          Defendants.           Unconstitutional Custom, Practice,
                                                 or Policy—(42 U.S.C. § 1983)
18                                             6. False Arrest/ False Imprisonment
                                               7. Battery (Wrongful Death)
19                                             8. Negligence (Wrongful Death)
20
                                              **DEMAND FOR JURY TRIAL**
21

22

23               **COMPLAINT FOR DAMAGES**

24        N.L.A, a minor, by and through their guardian, MARICRUZ HERRERA,

25 individually and as successor in interest to NOEL AGUILAR, deceased, and ELVIA

26 AGUILAR, individually, for their Complaint against Defendants COUNTY OF

27

28

                                   -1-

LOS ANGELES, ALBERT MURAD, JOSE RUIZ, and DOES 3-10, inclusive, allege as follows:

## INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal police shooting of NOEL AGUILAR, the father of N.L.A., and the son of ELVIA AGUILAR ("DECEDENT"), on May 26, 2014.

2.     Defendants ALBERT MURAD and JOSE RUIZ, and DOES 3-10 ("DEPUTIES") proximately caused DECEDENT's and Plaintiffs' injuries by firing the shots that killed DECEDENT, by integrally participating or failing to intervene in the shooting, and by engaging in other acts and/ or omissions around the time of the shooting that resulted in his death.

3.     Defendants COUNTY OF LOS ANGELES ("COUNTY"), ALBERT MURAD, JOSE RUIZ and DOES 3-10 also proximately caused DECEDENT's and Plaintiffs' injuries and are liable under state law and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

4.     The policies and customs behind shootings of civilians such as NOEL AGUILAR are fundamentally unconstitutional and constitute a menace of major proportions to the public. Accordingly, insofar as Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the killing of NOEL AGUILAR and to challenge the COUNTY's unconstitutional policies and practices, this civil rights action is firmly in the public interest.

## PARTIES

5.     At all relevant times, decedent NOEL AGUILAR was an individual residing in the County of Los Angeles, California.

6.     Plaintiff N.L.A. is a minor individual residing in the County of Los Angeles, California and is the natural born child of DECEDENT. N.L.A. sues by

COMPLAINT FOR DAMAGES

1    and through her *Guardian* MARICRUZ HERRERA, both in her individual capacity

2    as the child of DECEDENT and in a representative capacity as a successor-in-

3    interest to DECEDENT pursuant to California Civil Code § 377.32. N.L.A. seeks

4    both survival and wrongful death damages under federal and state law.

5         7.    Plaintiff ELVIA AGUILAR is an individual residing in the County of

6    Los Angeles, California and is the mother of DECEDENT. ELVIA AGUILAR sues

7    both in her individual capacity as the mother of DECEDENT and in a representative

8    capacity as a successor-in-interest to DECEDENT pursuant to California Civil Code

9    § 377.32. ELVIA AGUILAR seeks both survival and wrongful death damages

10   under federal and state law.

11        8.    Defendants ALBERT MURAD, JOSE RUIZ, and DOES 3-8

12   (DEPUTIES) are sheriff's deputies for the Los Angeles County Sheriff's

13   Department ("LASD"). Said DEPUTIES were acting under color of law within the

14   course and scope of their duties as sheriff's deputies for the LASD. Said DEPUTIES

15   were acting with the complete authority and ratification of their principal, Defendant

16   COUNTY OF LOS ANGELES.

17        9.    Defendants DOES 9-10 are supervisorial officers for the LASD who

18   were acting under color of law within the course and scope of their duties as

19   sheriff's deputies for the LASD. DOES 9-10 were acting with the complete

20   authority and ratification of their principal, Defendant COUNTY OF LOS

21   ANGELES.

22        10.   Defendants DOES 9-10 are managerial, supervisorial, and

23   policymaking employees of the LASD, who were acting under color of law within

24   the course and scope of their duties as managerial, supervisorial, and policymaking

25   employees for the LASD. DOES 9-10 were acting with the complete authority and

26   ratification of their principal, Defendant COUNTY OF LOS ANGELES.

27        11.   On information and belief, defendants ALBERT MURAD, JOSE RUIZ

28   and DOES 3-10 were residents of the County of Los Angeles.

1    12.    At all relevant times, Defendant COUNTY OF LOS ANGELES is and

2  was a duly organized public entity, form unknown, existing under the laws of the

3  State of California.  Defendant COUNTY OF LOS ANGELES is a chartered

4  subdivision of the State of California with the capacity to be sued. Defendant

5  COUNTY OF LOS ANGELES is responsible for the actions, omissions, policies,

6  procedures, practices, and customs of its various agents and agencies, including the

7  LASD and its agents and employees. At all relevant times, Defendant COUNTY OF

8  LOS ANGELES was responsible for assuring that the actions, omissions, policies,

9  procedures, practices, and customs of the LASD and its employees and agents

10 complied with the laws of the United States and of the State of California. At all

11 relevant times, COUNTY OF LOS ANGELES was the employer of Defendants

12 ALBERT MURAD, JOSE RUIZ and DOE DEPUTIES.

13    13.    In doing the acts and failing and omitting to act as hereinafter

14 described, Defendants ALBERT MURAD, JOSE RUIZ and DOE DEPUTIES 3-8

15 were acting on the implied and actual permission and consent of supervisory

16 Defendants DOES 9-10.

17    14.    In doing the acts and failing and omitting to act as hereinafter

18 described, Defendants ALBERT MURAD, JOSE RUIZ and DOES 3-10 were acting

19 on the implied and actual permission and consent of the COUNTY OF LOS

20 ANGELES.

21    15.    The true names and capacities, whether individual, corporate,

22 association or otherwise of Defendants DOES 3-10, inclusive, are unknown to

23 Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs

24 will seek leave to amend this complaint to show the true names and capacity of

25 these Defendants when they have been ascertained. Each of the fictitiously-named

26 Defendants is responsible in some manner for the conduct or liabilities alleged

27 herein.

28

16.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

17.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and its agents ratified all of the acts complained of herein.

18.     All Defendants who are natural persons, including defendants ALBERT MURAD, JOSE RUIZ and DOES 3-10, are sued individually and/or in his/her official capacity as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for the LASD.

19.     NOEL AGUILAR died as a direct and proximate result of the actions of Defendants ALBERT MURAD, JOSE RUIZ and DOE DEPUTIES. Defendants ALBERT MURAD, JOSE RUIZ and DOE DEPUTIES are directly liable for Plaintiffs' injuries under federal law pursuant to 42 U.S.C. § 1983.

20.     Defendants COUNTY OF LOS ANGELES and DOES 9-10 are liable for Plaintiffs' injuries under California law and under the doctrine of *respondeat superior*. Liability under California law for public entities and public employees is based upon California Government Code §§ 815.2, 820, and 820.8.

21.     The Plaintiffs filed comprehensive and timely claims for damages with the County of Los Angeles on November 25, 2014, pursuant to applicable sections of the California Government Code.

22.     On December 8, 2014, the County of Los Angeles denied said claims by a letter rejecting said claims.

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

23.    This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

24.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

25.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1. through 24. of this Complaint with the same force and effect as if fully set forth herein.

26.    On May 26, 2014, the deceased, NOEL AGUILAR, was riding his bicycle on the sidewalk of Long Beach Boulevard, in Long Beach, California. Defendants MURAD and RUIZ attempted to conduct a traffic stop.  Noel Aguilar left his bicycle and ran northbound through an alley east of the 6900 Block of Long Beach Boulevard in Long Beach, Los Angeles County, California.

27.    The alley into which Noel Aguilar ran was a dead end alley with no exit.  When he stopped running, defendants MURAD and RUIZ caught up with Noel Aguilar and took him to the ground, face down.  They then handcuffed his left wrist.

28.    While Noel Aguilar was handcuffed, face down, and being held down by the two deputies, with other deputies standing nearby, defendants ALBERT MURAD and JOSE RUIZ fired their service firearms multiple times, striking NOEL AGUILAR on the back side of his body multiple times, resulting in his death.  One of the defendants, JOSE RUIZ, during this shooting spree, also shot the other defendant deputy, ALBERT MURAD.

29.   At the time that he was shot and killed on May 26, 2014, NOEL AGUILAR had committed no crimes and defendants ALBERT MURAD and JOSE RUIZ lacked probable cause to make an arrest of his person.

30.   At the time that he was shot and killed on May 26, 2014, NOEL AGUILAR presented no immediate danger to any of the deputies on the scene.

31.   From the time that the defendants, ALBERT MURAD and JOSE RUIZ and DOES 3-8 first saw NOEL AGUILAR on May 26, 2014, until they shot and killed NOEL AGUILAR, minutes later, at no time during that relevant time period did NOEL AGUILAR have a weapon or firearm in his hands, or any object that appeared similar to a weapon or firearm.

32.   NOEL AGUILAR died on May 26, 2014, as a direct and immediate result of being shot by defendants ALBERT MURAD and JOSE RUIZ, sustaining gunshot wounds to the back of his neck, to the upper back, on the back of mid chest, to his right thigh, to his left arm, to his left shoulder, as well as sustaining lacerations, contusions and lacerations throughout his body.

33.   At no time, prior to being shot and killed by defendants ALBERT MURAD and JOSE RUIZ, did NOEL AGUILAR display a weapon or other instrument, or take any physical action that would lead a reasonable officer to believe that his or her life was in danger or in threat of eminent harm.

34.   A weapon may have been found on NOEL AGUILAR after his death, but said weapon was never displayed by NOEL AGUILAR, and the defendant deputies did not see a weapon prior to shooting and killing NOEL AGUILAR.

35.   After the shooting, the officers delayed requesting medical assistance for NOEL AGUILAR.

36.   At the time of the shooting of May 26, 2014, NOEL AGUILAR was unarmed and did not have anything in his hands, other than a handcuff placed on his left wrist by the defendant deputies.  Noel Aguilar was a person much smaller than either of the officers and presented no threat of bodily harm or death to the

COMPLAINT FOR DAMAGES

1  defendant deputies, ALBERT MURAD or JOSE RUIZ, or the other deputies on the
2  scene, that would justify the use of lethal deadly force.  Defendant deputies
3  ALBERT MURAD and JOSE RUIZ used excessive force in shooting and killing
4  NOEL AGUILAR on May 26, 2014, as he lay face down on the pavement.

5       37.     Plaintiffs are informed and believe, and thereupon allege, that NOEL
6  AGUILAR died after experiencing great pain and anguish, after he was thrown
7  down on the ground by defendant deputies, physically abused, then shot and killed
8  by defendants ALBERT MURAD and JOSE RUIZ.

9       38.     On May 26, 2014, at the time of being shot, or immediately prior,
10  NOEL AGUILAR was not engaged in the commission of a crime and, under the
11  United States Constitution and the cases interpreting it, had rights including a liberty
12  interest to be free in one's person from unlawful search and seizure of one's person
13  and a right to not have excessive force used against him.

14       39.     When defendants ALBERT MURAD and JOSE RUIZ engaged in the
15  pursuit of NOEL AGUILAR on May 26, 2014, they did not possess information that
16  NOEL AGUILAR was engaged in the commission of a crime, and they had no
17  reasonable suspicion of wrong doing, and there was no probable cause of the
18  commission of a crime.  Defendants ALBERT MURAD and JOSE RUIZ, while
19  acting under color of law, used excessive force in shooting and killing NOEL
20  AGUILAR.

21       40.     Defendants ALBERT MUAD and JOSE RUIZ and DOES 3-10, while
22  acting within the course and scope of their employment with DEFENDANT
23  COUNTY OF LOS ANGELES, detained and arrested NOEL AGUILAR, which
24  was a violation of his Fourth Amendment rights to be free from unreasonable
25  searches and seizures as he had committed no crimes and there was no legal reason
26  for him to be detained.

27       41.     On May 26, 2014, in the 6900 block of Long Beach Boulevard, in the
28  City of Long Beach, California, defendants ALBERT MURAD and JOSE RUIZ,

COMPLAINT FOR DAMAGES

1  while acting within the course and scope of their employment with defendant

2  COUNTY OF LOS ANGELES and the Los Angeles County Sheriff's Department,

3  and under color of State law, used excessive force and shot and killed NOEL

4  AGUILAR without probable cause, justification or excuse. At the time that

5  defendants MURAD and RUIZ shot and killed NOEL AGUILAR, he presented no

6  threat to the deputies' lives or the lives of others.

7       42.    At the time that the two officers, ALBERT MURAD and JOSE RUIZ,

8  and the other deputies present, engaged in the pursuit of NOEL AGUILAR, he was

9  engaged in the lawful activity of riding his bicycle. Even though he ran from the

10  officers when they attempted a traffic stop, this did not justify the use of excessive

11  force in shooting and killing him within a couple of minutes from the time of the

12  initial encounter. Without warning of any sorts, and without legal justification,

13  Defendants ALBERT MURAD and JOSE RUIZ,, without reason, cause or

14  justification, fired upon and killed NOEL AGUILAR. When NOEL AGUILAR was

15  shot and killed, he presented no threat to the defendant officers or others, and there

16  was no legal cause or excusive to seize the person or Noel Aguilar.

17       43.    NOEL AGUILAR did as a direct result of being shot multiple times by

18  defendants ALBERT MURAD and JOSE RUIZ.

19       44.    Defendants ALBERT MURAD and JOSE RUIZ, and each of them,

20  discharged his firearm recklessly, intentionally, tortuously and/or, in the alternative,

21  negligently, with the intent to kill and/or commit serious bodily injury upon Noel

22  Aguilar and to violate his civil rights.

23       45.    DECEDENT Noel Aguilar sustained injuries, including but not limited

24  to pain and suffering, loss of enjoyment of life, and death when he was shot by

25  Defendants ALBERT MURAD and JOSE RUIZ who were acting under color of law

26  and as employees of the LASD. Defendants DOES 3-10, inclusive, integrally

27  participated in or failed to intervene in the shooting.

28

1    46.    The use of deadly force against DECEDENT was excessive and

2    objectively unreasonable under the circumstances, especially because at all relevant

3    times DECEDENT was unarmed and posed no threat to defendants MURAD,

4    RUIZ, or any DOE DEPUTY or any other individual.

5    47.    Upon information and belief, after being shot, DECEDENT was

6    immobile, bleeding profusely, and in obvious and critical need of emergency

7    medical care and treatment. Defendants did not timely summon medical care or

8    permit medical personnel to treat DECEDENT. The delay of medical care to

9    DECEDENT caused DECEDENT extreme physical and emotional pain and

10   suffering, and was a contributing cause of DECEDENT's death.

11   48.    Plaintiffs N.L.A. and Elvia Aguilar were dependent on DECEDENT,

12   including financially dependent.

13

14   **FIRST CLAIM FOR RELIEF**

15   **Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

16   (Against Defendants MURAD, RUIZ, and DOE DEPUTIES)

17   49.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

18   through 48 of this Complaint with the same force and effect as if fully set forth

19   herein.

20   50.    When Defendant ALBERT MURAD and JOSE RUIZ and DOE

21   DEPUTIES shot DECEDENT and placed him in handcuffs, they violated

22   DECEDENT's right to be secure in his person against unreasonable searches and

23   seizures as guaranteed to the DECEDENT under the Fourth Amendment to the

24   United States Constitution and applied to state actors by the Fourteenth Amendment.

25   51.    As a result of their misconduct, Defendants MURAD, RUIZ, and DOE

26   DEPUTIES are liable for DECEDENT's injuries, either because they were integral

27   participants in the wrongful detention and arrest, or because they failed to intervene

28   to prevent these violations.

1    52.    Defendants MURAD, RUIZ and DOE DEPUTIES detained

2    DECEDENT without reasonable suspicion and arrested him without probable cause.

3    53.    The conduct of Defendant MURAD, RUIZ and DOE DEPUTIES was

4    willful, wanton, malicious, and done with reckless disregard for the rights and safety

5    of DECEDENT and therefore warrants the imposition of exemplary and punitive

6    damages as to Defendants DOE DEPUTIES.

7    54.    Plaintiffs N.L.A. and ELVIA AGUILAR bring this claim in each case

8    as successor-in-interest to the DECEDENT, and in each case seek both survival and

9    wrongful death damages for the violation of DECEDENT's rights.

10    55.    Plaintiffs also seek attorney fees under this claim.

11

12                       **SECOND CLAIM FOR RELIEF**

13    **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

14               (Against Defendants MURAD, RUIZ and  DOE DEPUTIES)

15    56.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

16    through 55 of this Complaint with the same force and effect as if fully set forth

17    herein.

18    57.    Defendants MURAD and RUIZ' unjustified shooting deprived

19    DECEDENT of his right to be secure in his person against unreasonable searches

20    and seizures as guaranteed to DECEDENT under the Fourth Amendment to the

21    United States Constitution and applied to state actors by the Fourteenth Amendment.

22    58.    As a result, DECEDENT suffered extreme pain and suffering and

23    eventually suffered a loss of life and of earning capacity.  Plaintiffs have also been

24    deprived of the life-long love, companionship, comfort, support, society, care, and

25    sustenance of DECEDENT, and will continue to be so deprived for the remainder of

26    their natural lives.  Plaintiffs claim funeral and burial expenses and a loss of

27    financial support.

28

COMPLAINT FOR DAMAGES

59. The shooting was excessive and unreasonable, especially because DECEDENT had not threatened to cause physical injury to defendants MURAD, RUIZ or any DOE DEPUTIES or any other person.

60. Defendants MURAD and RUIZ' shooting and use of force against the person of NOEL AGUILAR violated their training.

61. The conduct of Defendants MURAD, RUIZ and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to individual Defendants MURAD, RUIZ and DOE DEPUTIES.

62. Plaintiffs N.L.A., and ELVIA AGUILAR bring this claim in each case as a successor-in-interest to DECEDENT, and in each case seek both survival and wrongful death damages for the violation of DECEDENT's rights.

63. Plaintiffs also seek attorney fees under this claim.

**THIRD CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against Defendants MURAD, RUIZ and DOE DEPUTIES)

64. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 63 of this Complaint with the same force and effect as if fully set forth herein.

65. The denial of medical care by Defendants MURAZ, RUIZ and DOE DEPUTIES deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

66. As a result, DECEDENT suffered extreme pain and suffering and eventually suffered a loss of life and earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and

-12-

1   sustenance of DECEDENT, and will continue to be so deprived for the remainder of

2   their natural lives.  Plaintiffs are also claiming funeral and burial expenses and a loss

3   of financial support.

4        67.    Defendants MURAD, RUIZ and DOE DEPUTIES knew that failure to

5   provide timely medical treatment to DECEDENT could result in further significant

6   injury or the unnecessary and wanton infliction of pain, but disregarded that serious

7   medical need, causing DECEDENT great bodily harm and death.

8        68.    The conduct of defendants MURAD, RUIZ and DOE DEPUTIES was

9   willful, wanton, malicious, and done with reckless disregard for the rights and safety

10  of DECEDENT and therefore warrants the imposition of exemplary and punitive

11  damages as to Defendants MURAD, RUIZ and DOE DEPUTIES.

12       69.    Plaintiffs Plaintiffs N.I.A. and ELVIA AGUILAR bring this claim in

13  each case as a successor-in-interest to DECEDENT, and in each case seek both

14  survival and wrongful death damages for the violation of DECEDENT's rights.

15       70.    Plaintiffs also seek attorney fees under this claim.

16

17              **FOURTH CLAIM FOR RELIEF**

18           **Substantive Due Process (42 U.S.C. § 1983)**

19              (Against Defendants DOE DEPUTIES)

20       71.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

21  through 70 of this Complaint with the same force and effect as if fully set forth

22  herein.

23       72.    N.I.A. had a cognizable interest under the Due Process Clause of the

24  Fourteenth Amendment of the United States Constitution to be free from state

25  actions that deprive her of life, liberty, or property in such a manner as to shock the

26  conscience, including but not limited to unwarranted state interference in Plaintiff's

27  familial relationship with her father, DECEDENT.

28

-13-

73.   ELVIA AGUILAR had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her son, DECEDENT.

74.   DECEDENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

75.   The aforementioned actions of defendants MURAD, RUIZ and DOE DEPUTIES, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

76.   Defendants, MURAD, RUIZ and DOE DEPUTIES thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

77.   As a direct and proximate cause of the acts of defendants MURAD, RUIZ and DOE DEPUTIES, DECEDENT experienced severe pain and suffering and lost his life and earning capacity.  Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

78.   The conduct of defendants MURAD, RUIZ and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety

COMPLAINT FOR DAMAGES

1    of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary

2    and punitive damages as to Defendants MURAD, RUIZ and DOE DEPUTIES.

3        79.    Plaintiffs N.L.A. and ELVIA AGUILAR bring this claim in each case

4    individually and as a successor-in-interest to DECEDENT, and in each case seek

5    both survival and wrongful death damages for the violation of DECEDENT's rights.

6        80.    Plaintiffs also seek attorney fees under this claim.

7

8                        **FIFTH CLAIM FOR RELIEF**

9    **Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

10                   (Against Defendants COUNTY and DOES 9-10)

11       81.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

12   through 80 of this Complaint with the same force and effect as if fully set forth

13   herein.

14       82.    At the time of the shooting of NOEL AGUILAR by defendants

15   ALBERT MURAD and JOSE RUIZ, defendant COUNTY OF LOS ANGELES had

16   in place, and had ratified, policies, procedures, customs and practices of the

17   COUNTY OF LOS ANGELES Sheriff's Department which permitted and

18   encouraged their Sheriff deputies and officials to unjustifiably, unreasonably violate

19   the constitutional rights to the public that reside in the low income communities of

20   the County of Los Angeles and in the South Central part of the County of Los

21   Angeles.

22       83.    Specifically, the defendant COUNTY OF LOS ANGELES and its

23   Sheriff's Department, "LASD" has a history of criminal and violent gangs or

24   "cliques" forming among sheriff's deputies in the County jails and at sub-stations

25   throughout the County of Los Angeles.  Those criminal and violent gangs that have

26   been exposed thus far include the "Little Devils," the "Vikings," the "Regulators,"

27   the "3000 Boys," the "2000 Boys," the "Jump Out Boys," and others.  These

28   criminal and violent gangs self-identify through logos and tattoos. These criminal

1  and violent gangs, and a corresponding violent and criminal subculture, within

2  LASD has contributed to acts of excessive force, insubordination, and a "code of

3  silence" on patrol and in the jails for many years. Within these gangs, getting away

4  with the use of excessive and unreasonable force – including deadly force –

5  increases a deputy's status in the gang, as defined in California case law applying

6  Penal Code Section 186.22.

7       84.    Problems associated with these deputy gangs have been known to the

8  defendant COUNTY OF LOS ANGELES since at least 1992.  The 1992 Kolts

9  Commission was created by the County after LASD shootings of unarmed citizens

10  provoked popular protests and demonstrations. The Board of Supervisors appointed

11  James G. Kolts, a highly respected retired superior court judge and former

12  prosecutor to investigate the allegations of pervasive incidence of excessive force

13  among LASD deputies.  The subsequent report ("the Kolts Report") described

14  problems associated with the "Vikings" gang at the Lynwood Station that had

15  resulted in civil liability and an injunction. The Kolts Report described the

16  "Vikings" gang as comprised of "an inner group of deputies with peculiar and

17  unique hard attitudes" that "manifested themselves in the form of excessive force

18  and disciplinary problems between deputies and their supervisors."  The Kolts

19  Report recommended that the LASD "identify, root out, and punish severely any

20  lingering gang-like behavior by its deputies," and that "unit commanders

21  aggressively break up deputy groups which manifest any of the conduct which

22  signifies gang-related activity."  These sheriff gangs have expanded into the south

23  central Los Angeles area, including the specific location of the shooting in this case.

24       85.    Defendant COUNTY OF LOS ANGELES knew or should have known

25  about the findings of the Kolts Report, including the above recommendations.

26  Plaintiff is informed and believes and thereupon alleges that notwithstanding these

27  recommendations, the defendant COUNTY OF LOS ANGELES has ignored them

28  and instead have been deliberately indifferent to the continued growth of deputy

1   gangs in LASD, including at Century Station, Lynwood Station, Lancaster, and in

2   particular the LASD "Gang Suppression Units", which is the unit that defendants

3   MURAD, RUIZ and DOES 4-10 belonged to at the time that NOEL AGUILAR was

4   shot, as alleged herein.

5         86.     Plaintiffs are informed and believe and thereon allege that on or before

6   the date that NOEL AGUILAR was shot, the "Vikings" gang had merged with, had

7   become known as, or had morphed into the Regulators" and "Jump Out Boys"

8   gangs that worked throughout the County under the Gang Suppression Unit, (also

9   referred to the Gang Enforcement Team, "GET"). Deputies belonging to these

10   criminal and violent sheriff gangs were and are encouraged to use excessive force,

11   including deadly force, against citizens.  The use of excessive force, including

12   discharge of firearms and use of deadly force, was celebrated by the members of

13   these deputy gangs.  With respect to the "Regulators" "Vikings" and "Jump Out

14   Boys" gangs, the use of excessive or unreasonable force by a deputy associated with

15   the gang increases a member's status within the gang. The status of a gang member

16   is doubly increased if the force involved is lethal, as well as if the gang member

17   avoids civil or criminal liability for his or her unlawful conduct. This gang-clique

18   deputy culture is tolerated and condoned by the station's leadership, including top

19   leadership in the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT.  In this

20   case, Defendants MURAD and RUIZ and DOES 4-10 were associated with, were

21   members of, were associates of, sympathized with, were influenced by, or adopted

22   the principles of the "Regulators" and "Jump Out Boys" gangs.

23         87.     Plaintiffs are informed and believe, and thereon allege, that prior to the

24   shooting of decedent NOEL AGUILAR, in a speech delivered by former

25   Undersheriff Paul Tanaka to the patrol deputies at Century Station and deputies of

26   the Gang Suppression Unit, COUNTY deputies  were encouraged to "function right

27   to the edge of the line" and be very aggressive in using force against citizens.

28   Plaintiff believes this amounted to direct encouragement of these aforementioned

1  deputy gangs, for whom the use of unconstitutional and excessive force is status

2  symbol. This speech facilitated the use of unreasonable and excessive force against

3  NOEL AGUILAR in this case.

4      88.    Plaintiffs are informed and believe, and thereon allege, that on or

5  before the shooting of NOEL AGUILAR, defendant COUNTY OF LOS ANGELES

6  also encouraged the patrol deputies at Century Station, and deputies of the Gang

7  Suppression Units (some of whom were or are members of gangs) to "operate in the

8  grey area." Plaintiff contends that this was understood as further encouragement and

9  support for the deputy gangs, and made more likely the use of unreasonable and

10  excessive force against NOEL AGUILAR in this case.

11      89.    Plaintiffs are informed and believe, and thereon allege, that prior to the

12  shooting of NOEL AGUILAR, the Defendant COUNTY OF LOS ANGELES was

13  aware of problems of insubordination, excessive use of force, and an internal "code

14  of silence" among LASD deputies. The "code of silence," as it is colloquially

15  known, is the understanding among deputies that misconduct, corruption, crimes,

16  and the excessive use of force will not be reported through the chain of command.

17  The "code of silence" means that peace officers are expected to generate false

18  reports and perjure themselves to cover up the use of excessive force and other

19  misconduct by other officers. The "code of silence" encourages criminal and violent

20  gangs such as the "Vikings" and "Regulators" to commit insubordinate acts,

21  generate false reports, and use excessive or unreasonable force in an environment

22  which condoned, ratified and enabled deputy misconduct and use of excessive force.

23      90.    On and before May 26, 2014, defendant COUNTY OF LOS

24  ANGELES was aware or should have been aware that they had a problem on their

25  hands. Some of the incidents leading up to this period include the following:

26      (a)    A Ninth Circuit decision holding that Defendant Former Sherriff Lee

27          Baca could be held personally liable for unconstitutional practices in

28          Defendant COUNTY's jails;

-18-

1    (b)    A series of civil rights settlements and verdicts adverse to Defendant

2    COUNTY;

3    (c)    A series of public revelations of corruption, abuse and criminal conduct

4    by local and national news outlets;

5    (d)    Investigations by Department of Justice, Department of Civil Rights

6    and the Federal Bureau of Investigation; and

7    (e)    A series of public meetings at the County Board of Supervisors, at

8    which a motion was passed to form a Los Angeles County Citizens'

9    Commission on Jail Violence (hereinafter "ACCJV").

10    91.    Plaintiffs are informed and believe, and thereon allege, that based on

11    the defendant COUNTY OF LOS ANGELES' tolerance of rampant deputy

12    misconduct, as stated above, LASD deputies operate under a COUNTY OF LOS

13    ANGELES custom and practice of falsifying police reports of officer-involved

14    shootings, including the fabrication of claims that the victim was reaching for his

15    waistband or was aiming a weapon at them at the time of the shooting.

16    92.    Said policies, procedures, customs and practices also called for the

17    defendant COUNTY OF LOS ANGELES and its Sheriff's Department not to

18    discipline, prosecute, or objectively and/or independently investigate or in any way

19    deal with or respond to known incidents, complaints, of wrongful shootings by

20    deputy sheriffs of the COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT,

21    or the related claims and lawsuits made as a result of such shootings.

22    93.    Said policies, procedures, customs and practices called for and lead to

23    the refusal of defendant COUNTY OF LOS ANGELES  to investigate complaints of

24    previous incidents of wrongful shootings and, instead, officially claim that such

25    incidents were justified and proper.

26    94.    Said policies, procedures, customs and practices called for the refusal

27    of defendant COUNTY OF LOS ANGELES to conduct executive meetings within

28    five days of such shootings to evaluate the shooting, prepare a plan to conceal any

1  misconduct committed during such incidents, and to plan and conduct a campaign to

2  conceal such misconduct.

3      95.    Said policies, procedures, customs and practices called for COUNTY

4  OF LOS ANGELES, by means of inaction and coverup, to encourage its sheriff

5  deputies to believe that improper shooting of unarmed suspects, including members

6  of minority groups, was permissible. The concealment and cover up included

7  writing false police reports and testifying falsely as to how the excessive force

8  incident occurred.

9      96.    Said policies, procedures, customs and practices of defendant

10  COUNTY OF LOS ANGELES evidenced a deliberate indifference to the violations

11  of the constitutional rights of NOEL AGUILAR. This indifference was manifested

12  by the failure to change, correct, revoke, or rescind said policies, procedures,

13  customs and practices in light of prior knowledge by defendant COUNTY OF LOS

14  ANGELES of indistinguishably similar incidents of unjustified and unreasonable

15  Police shootings.

16      97.    Said policies, procedures, customs and practices of defendant

17  COUNTY OF LOS ANGELES evidenced a deliberate indifference to the violations

18  of the constitutional rights of NOEL AGUILAR. This indifference was manifested

19  by the failure to change, correct, revoke, or rescind said policies, procedures,

20  customs and practices, and tactic and weapons training in light of prior knowledge

21  by defendant COUNTY OF LOS ANGELES of indistinguishably similar incidents.

22      98.    Deliberate indifference to the civil rights of minority groups and other

23  victims of excessive force and Police officer-involved shootings was also evidenced

24  by defendant COUNTY OF LOS ANGELES  ignoring of the history and pattern of

25  prior civil lawsuits alleging civil rights violations and the related payment of

26  judgments to such individuals.

27      99.    Deliberate indifference is also evidenced by maintenance of an

28  inadequate system of firearms discharges by the COUNTY OF LOS ANGELES

COMPLAINT FOR DAMAGES

1  SHERIFF'S DEPARTMENT which failed to identify instances of improper use of

2  firearms, as well as by the failure of by said defendant to adequately train and more

3  closely supervise or retrain deputies who in fact improperly used such weapons.

4       100.   Other systemic deficiencies of COUNTY OF LOS ANGELES which

5  indicated, and continue to indicate, a deliberate indifference to the violations of the

6  civil rights by Sheriff's deputies of the COUNTY OF LOS ANGELES include:

7       (a)    preparation of investigative reports designed to vindicate the use of

8       firearms, regardless of whether such use was justified;

9       (b)    preparation of investigative reports which uncritically rely solely on the

10      word of Sheriff deputies involved in the shooting incidents and which

11      systematically fail to credit testimony by non-deputy witnesses;

12      (c)    preparation of investigative reports which omit factual information and

13      physical evidence which contradicts the accounts of the deputies involved;

14      (d)    issuance of public statements exonerating deputies involved in such

15      incidents prior to the completion of investigations of the shootings;

16      (e).    failure to objectively and independently review investigative reports by

17      responsible supervisors for accuracy or completeness and acceptance of

18      conclusions which are unwarranted by the evidence of the shooting or which

19      contradict such evidence; and,

20      (f)    failure to maintain centralized department-wide system for the tracking

21      and monitoring of the use of excessive force, abuse of authority, and race-

22      based misconduct by individual Sheriff deputies so as to identify those

23      deputies who engage in a pattern of excessive force, abuse of authority, and

24      misconduct.

25       101.   The foregoing acts, omissions, and systemic deficiencies are policies

26  and customs of defendant COUNTY OF LOS ANGELES  caused defendants

27  MURAD, RUIZ and  DOES 3-10 to be unaware of the rules and laws governing

28  permissible use of firearms and to believe that firearms discharges are entirely

1  within the discretion of the deputy and that improper discharges would not be

2  objectively, thoroughly and properly investigated, all with the foreseeable result that

3  defendants ALBERT MURAD and JOSE RUIZ would use deadly force in situations

4  where such force is neither necessary, reasonable nor legal, thereby violating the

5  civil rights of the citizens of this state.

6      102.   As a result of the aforementioned acts, omissions, systematic

7  deficiencies, policies, procedures, customs and practices of defendant COUNTY OF

8  LOS ANGELES, Defendant deputy sheriffs ALBERT MURAD and JOSE RUIZ

9  wrongfully shot and killed NOEL AGUILAR, thereby causing the damages claimed

10 herein.

11     103.   On information and belief, Defendants MURAD, RUIZ and DOE

12 DEPUTIES' unjustified shooting of DECEDENT was found to be within LASD

13 policy.

14     104.   On information and belief, Defendants MURAD, RUIZ and DOE

15 DEPUTIES' unjustified shooting of DECEDENT was ratified by LASD

16 supervisorial officers.

17     105.   On information and belief, Defendants MURAD, RUIZ and DOE

18 DEPUTIES were not disciplined for the unjustified shooting DECEDENT.

19     106.   On and for some time prior to May 26, 2014 (and continuing to the

20 present date), Defendants COUNTY OF LOS ANGELES and DOES 9-10, acting

21 with gross negligence and with reckless and deliberate indifference to the rights and

22 liberties of the public in general, and of Plaintiffs and DECEDENT, and of persons

23 in their class, situation and comparable position in particular, knowingly maintained,

24 enforced and applied an official recognized custom, policy, and practice of:

25         (a)   Employing and retaining as police officers and other personnel,

26               including defendants ALBERT MURAD, JOSE RUIZ DOE

27               DEPUTIES 3-8, whom Defendants COUNTY OF LOS

28               ANGELES and DOES 9-10 at all times material herein knew or

1    reasonably should have known had dangerous propensities for

2    abusing their authority and for mistreating citizens by failing to

3    follow written LASD policies, including the use of excessive

4    force;

5    (b)    Of inadequately supervising, training, controlling, assigning, and

6    disciplining COUNTY OF LOS ANGELES sheriff's deputies

7    and other personnel, including defendants ALBERT MURAD,

8    JOSE RUIZ,  DOE DEPUTIES 3-8, whom Defendants

9    COUNTY OF LOS ANGELES and DOES 9-10 knew or in the

10   exercise of reasonable care should have known had the

11   aforementioned propensities and character traits, including the

12   propensity for violence and the use of excessive force;

13   (c)    By maintaining grossly inadequate procedures for reporting,

14   supervising, investigating, reviewing, disciplining and

15   controlling the intentional misconduct by Defendants MURAD,

16   RUIZ and DOE DEPUTIES, who are sheriff's deputies and/or

17   agents of COUNTY OF LOS ANGELES;

18   (d)    By failing to discipline COUNTY sheriff's deputies' and/or

19   agents' conduct, including but not limited to, unlawful detention

20   and excessive force;

21   (e)    By ratifying the intentional misconduct of defendants MURAD,

22   RUIZ and DOE DEPUTIES and other sheriff's deputies and/ or

23   agents, who are sheriff's deputies and/or agents of COUNTY OF

24   LOS ANGELES;

25   (f)    By having and maintaining an unconstitutional policy, custom,

26   and practice of detaining and arresting individuals without

27   probable cause or reasonable suspicion, and using excessive

28   force, including deadly force, which also is demonstrated by

1  inadequate training regarding these subjects.  The policies,

2  customs, and practices of Defendants COUNTY OF LOS

3  ANGELES and DOES 9-10 were maintained with a deliberate

4  indifference to individuals' safety and rights; and

5       (g)   By failing to properly investigate claims of unlawful detention

6            and excessive force by COUNTY OF LOS ANGELES sheriff's

7            deputies.

8      107.   By reason of the aforementioned policies and practices of Defendants

9  COUNTY OF LOS ANGELES and DOES 9-10, DECEDENT was severely injured

10  and subjected to pain and suffering and lost his life.

11      108.   Defendants COUNTY OF LOS ANGELES and DOES 9-10, together

12  with various other officials, whether named or unnamed, had either actual or

13  constructive knowledge of the deficient policies, practices and customs alleged in

14  the paragraphs above.  Despite having knowledge as stated above, these defendants

15  condoned, tolerated and through actions and inactions thereby ratified such policies.

16  Said defendants also acted with deliberate indifference to the foreseeable effects and

17  consequences of these policies with respect to the constitutional rights of

18  DECEDENT, Plaintiffs, and other individuals similarly situated.

19      109.   By perpetrating, sanctioning, tolerating and ratifying the outrageous

20  conduct and other wrongful acts, Defendants DOES 9-10 acted with intentional,

21  reckless, and callous disregard for the life of DECEDENT and for DECEDENT's

22  and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and

23  customs implemented, maintained, and still tolerated by Defendants COUNTY OF

24  LOS ANGELES and DOES 9-10 were affirmatively linked to and were a

25  significantly influential force behind the injuries of DECEDENT and Plaintiffs.

26      110.   The actions of each of Defendants DOES 9-10 were willful, wanton,

27  oppressive, malicious, fraudulent, and extremely offensive and unconscionable to

28

1  any person of normal sensibilities, and therefore warrants the imposition of

2  exemplary and punitive damages as to Defendants DOES 9-10.

3      111.   By reason of the aforementioned acts and omissions of Defendants

4  COUNTY OF LOS ANGELES and DOES 9-10, Plaintiffs were caused to incur

5  funeral and related burial expenses, and loss of financial support.

6      112.   By reason of the aforementioned acts and omissions of Defendants

7  COUNTY OF LOS ANGELES and DOES 9-10, Plaintiffs have suffered loss of

8  love, companionship, affection, comfort, care, society, and future support.

9      113.   Accordingly, Defendants COUNTY OF LOS ANGELES and DOES 9-

10 10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

11     114.   Plaintiffs seek both wrongful death damages and survival damages

12 under this claim.

13     115.   Plaintiffs also seek attorney fees under this claim.

14                          **SIXTH CLAIM FOR RELIEF**

15                       **False Arrest/False Imprisonment**

16                            (Against All Defendants)

17     116.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

18 through 94 of this Complaint with the same force and effect as if fully set forth

19 herein.

20     117.   Defendants ALBERT MURAD and JOSE RUIZ and DOE DEPUTIES,

21 while working as sheriff's deputies for the LASD and acting within the course and

22 scope of their duties, intentionally deprived DECEDENT of his freedom of

23 movement by use of force, threats of force, menace, fraud, deceit, and unreasonable

24 duress.  Defendants MURAD and RUIZ and DOE DEPUTIES detained

25 DECEDENT without reasonable suspicion and arrested him without probable cause.

26     118.   DECEDENT did not knowingly or voluntarily consent.

27     119.   The conduct of defendants MURAD, RUIZ and DOE DEPUTIES was

28 a substantial factor in causing the harm to DECEDENT.

COMPLAINT FOR DAMAGES

120.   Defendant COUNTY OF LOS ANGELES is vicariously liable for the wrongful acts of Defendants MURAD, RUIZ and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

121.   The conduct of defendants MURAD, RUIZ and DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

122.   Plaintiffs N.L.A. and ELVIA AGUILAR bring this claim in each case as a successor-in-interest to DECEDENT, and in each case seek both survival and wrongful death damages for the violation of DECEDENT's rights.

123.   Plaintiffs also seek attorney fees under this claim.

## SEVENTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law)

(Wrongful Death)

(Against All Defendants)

124.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 102 of this Complaint with the same force and effect as if fully set forth herein.

125.   Defendants ALBERT MURAD, JOSE RUIZ and DOE DEPUTIES, while working as sheriff's deputies for the LASD, and acting within the course and scope of their duties, intentionally shot DECEDENT multiple times.  As a result of the actions of defendants MURAD, RUIZ and DOE DEPUTIES, DECEDENT suffered severe pain and suffering and ultimately died from his injuries and also lost his earning capacity. Defendants MURAD, RUIZ and DOE DEPUTIES had no legal justification for using force against DECEDENT, and said Defendants' use of

1 force while carrying out their duties as sheriff's deputies was an unreasonable use of

2 force.

3     126.  As a direct and proximate result of the conduct of defendants MURAD,

4 RUIZ and DOE DEPUTIES as alleged above, Plaintiffs and DECEDENT suffered

5 extreme and severe mental anguish and pain and have been injured in mind and

6 body.  Plaintiffs also have been deprived of the life-long love, companionship,

7 comfort, support, society, care and sustenance of DECEDENT, and will continue to

8 be so deprived for the remainder of their natural lives.  Plaintiffs also are claiming

9 funeral and burial expenses and a loss of financial support.

10     127.  Defendants DOES 9-10, inclusive, are directly liable and responsible

11 for the acts of Defendants MURAD, RUIZ and DOE 3-8 because DOES 9-10,

12 inclusive, failed to adequately train, discipline, supervise, or in any other way

13 control Defendants MURAD, RUIZ and DOE DEPUTIES in the exercise of their

14 unlawful use of excessive and lethal force.

15     128.  The COUNTY OF LOS ANGELES is vicariously liable for the

16 wrongful acts of Defendants MURAD, RUIZ and DOES 3-10 pursuant to section

17 815.2(a) of the California Government Code, which provides that a public entity is

18 liable for the injuries caused by its employees within the scope of the employment if

19 the employee's act would subject him or her to liability.

20     129.  The conduct of defendants MURAD, RUIZ and DOE 3-10 was

21 malicious, wanton, oppressive, and accomplished with a conscious disregard for the

22 rights of Plaintiffs and DECEDENT, entitling Plaintiffs, in each case individually

23 and as a successor-in-interest to DECEDENT, to an award of exemplary and

24 punitive damages as to Defendants MURAD, RUIZ and DOES 3-10.

25     130.  Plaintiffs N.L.A. and ELVIA AGUILAR bring this claim in each case

26 as a successor-in-interest to DECEDENT, and in each case seek both survival and

27 wrongful death damages for the violation of DECEDENT's rights.

28     131.  Plaintiffs also seek attorney fees under this claim.

### EIGHTH CLAIM FOR RELIEF
**Negligence (Cal. Govt. Code § 820 and California Common Law)**
(Wrongful Death)
(Against All Defendants)

132.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 110 of this Complaint with the same force and effect as if fully set forth herein.

133.   The actions and inactions of Defendants were negligent and reckless, including but not limited to:

      (a)   the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against DECEDENT;

      (b)   the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

      (c)   the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

      (d)   the failure to provide prompt medical care to DECEDENT;

      (e)   the failure to properly train and supervise employees, both professional and non-professional, including defendants MURAD, RUIZ and DOE DEPUTIES;

      (f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

134.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died and lost earning capacity.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.  Plaintiffs also have been deprived of the life-long love, companionship,

1  comfort, support, society, care and sustenance of DECEDENT, and will continue to

2  be so deprived for the remainder of their natural lives.  Plaintiffs also are claiming

3  funeral and burial expenses and a loss of financial support.

4        135.   The COUNTY OF LOS ANGELES is vicariously liable for the

5  wrongful acts of Defendants MURAD, RUIZ and DOES 3-10 pursuant to section

6  815.2(a) of the California Government Code, which provides that a public entity is

7  liable for the injuries caused by its employees within the scope of the employment if

8  the employee's act would subject him or her to liability.

9        136.   The conduct of Defendants MURAD, RUIZ, and DOES 3-10 was

10  malicious, wanton, oppressive, and accomplished with a conscious disregard for the

11  rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as

12  successors-in-interest to DECEDENT, to an award of exemplary and punitive

13  damages as to individual Defendants MURAD, RUIZ and DOES 3-10.

14        137.   Plaintiffs N.L.A. and ELVIA AGUILAR bring this claim in each case

15  as successor-in-interest to the DECEDENT, and in each case seek both survival and

16  wrongful death damages for the violation of DECEDENT's rights.

17        138.   Plaintiffs also seek attorney fees under this claim.

18

19

20              **PRAYER FOR RELIEF**

21        WHEREFORE, Plaintiffs request entry of judgment in their favor and against

22  Defendants the COUNTY OF LOS ANGELES, ALBERT MURAD, JOSE RUIZ,

23  and Does 3-10, inclusive, as follows:

24              A.    For compensatory damages, including both survival damages and

25                    wrongful death damages under federal and state law, in the

26                    amount to be proven at trial;

27              B.    For funeral and burial expenses, and loss of financial support;

28

COMPLAINT FOR DAMAGES

1
    C.    For punitive damages against the individual defendants in an

2
          amount to be proven at trial;

3
    D.    For interest;

4
    E.    For reasonable costs of this suit and attorneys' fees; and

5
    F.    For such further other relief as the Court may deem just, proper,

6
          and appropriate.

7

8
DATED:  March 26, 2015        GUIZAR, HENDERSON & CARRAZCO, L.L.P.

9

10
                    By_____/S/_____

11
                      Humberto M. Guizar
                      Attorneys for Plaintiffs

12

13

14
                **DEMAND FOR JURY TRIAL**

15

16
    Plaintiffs hereby demand a trial by jury.

17

18
DATED:  March 26, 2015        GUIZAR, HENDERSON & CARRAZCO, L.L.P.

19

20
                    By_____/S/_____

21
                      Humberto M. Guizar
                      Attorneys for Plaintiffs

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES